Filed 10/16/13  Soroush-Azar v. Palmer CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| HELEN SOROUSH-AZAR,<br>　　　Plaintiff, Cross-defendant and<br>Appellant,<br>　　　v.<br>SHEILA A. PALMER,<br>　　　Defendant, Cross-complainant and<br>Appellant; | D057131<br><br>(Super. Ct. No. GIC841421) |
| SHEILA A. PALMER,<br>　　　Plaintiff, Cross-defendant and<br>Appellant,<br>　　　v.<br>HELEN SOROUSH-AZAR,<br>　　　Defendant, Cross-complainant and<br>Appellant;<br>CITY OF SAN DIEGO,<br>　　　Defendant and Respondent;<br>KRISTINA HANCOCK et al.,<br>　　　Defendants, Cross-complainants and<br>Respondents. | (Super. Ct. No. GIC841446)<br><br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on September 20, 2013, be modified as follows:

1.　　　On page 5, the second sentence of the first paragraph is deleted and the

following sentence is inserted in its place:

> "Richert and his then neighbors, Soroush-Azar's predecessors in interest, were uncertain of the property boundary and they agreed to the location of the fence from a marker."

2. On page 12, the third and fourth sentences in the second full paragraph are deleted and the following sentences are inserted in their place:

> "In concert with his then neighbors, Soroush-Azar's predecessors in interest, Richert installed a gated chain-link fence across the pathway to keep his dogs in. Richert and his neighbors 'couldn't really fix a certain point,' and they agreed on a boundary by relying on 'a marker in the cement.' "

There is no change in the judgment. Soroush-Azar's petition for rehearing is denied.

_____
McCONNELL, P. J.

2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| HELEN SOROUSH-AZAR,<br>    Plaintiff, Cross-defendant and<br>Appellant,<br>    v.<br>SHEILA A. PALMER,<br>    Defendant, Cross-complainant and<br>Appellant; | D057131<br><br><br>(Super. Ct. No. GIC841421) |
| SHEILA A. PALMER,<br>    Plaintiff, Cross-defendant and<br>Appellant,<br>    v.<br>HELEN SOROUSH-AZAR,<br>    Defendant, Cross-complainant and<br>Appellant;<br>CITY OF SAN DIEGO,<br>    Defendant and Respondent;<br>KRISTINA HANCOCK et al.,<br>    Defendants, Cross-complainants and<br>Respondents. | (Super. Ct. No. GIC841446) |

APPEALS from a judgment of the Superior Court of San Diego County, Luis R. Vargas, Judge. Affirmed.

Connolly Law Office, Christopher J. Connolly; McKenna Long & Aldridge and Charles A. Bird for Plaintiff, Cross-defendant and Appellant and Defendant, Cross-complainant and Appellant Helen Soroush-Azar.

Law Offices of Mary A. Lehman and Mary A. Lehman for Defendant, Cross-complainant and Appellant and Plaintiff, Cross-defendant and Appellant Sheila Palmer.

Ferguson Case Orr Paterson and Wendy C. Lascher for Defendants, Cross-complainants and Respondents Kristina Hancock et al.

Jan I. Goldsmith, City Attorney, Donald R. Worley, Assistant City Attorney and Andrea M. Contreras, Deputy City Attorney, for Defendant and Respondent City of San Diego.


The City of San Diego (the City) never formally accepted, improved or used parts of Virginia Way, a street dedicated on an old map for a subdivision in La Jolla.  In separate actions against the City by Sheila Palmer, Helen Soroush-Azar, and James and Kristina Hancock (the Hancocks) under Code of Civil Procedure[1] sections 771.010 and 771.020, title was cleared to portions of the street abutting their properties.  After Palmer prevailed in her action, the City stipulated to judgments for Soroush-Azar and the Hancocks.

---

[1]     Further statutory references are also to the Code of Civil Procedure unless otherwise specified.

2

This consolidated action arose from disputes among the parties as to ownership and use of property to which title was cleared in favor of Soroush-Azar and the Hancocks. Soroush-Azar sued Palmer, and Palmer cross-complained; Palmer sued Soroush-Azar, the Hancocks, and the City, and the Hancocks cross-complained.

Soroush-Azar appeals the judgment, contending the trial court erred by determining that under the agreed boundary doctrine Palmer owns property within a gated fence her predecessor in interest placed across a concrete pathway adjacent to the Soroush-Azar property, and Palmer has a private easement over Soroush-Azar's property for vehicular access. Palmer also appeals, contending the court erred by finding the judicial estoppel doctrine barred her from challenging the stipulated judgments for Soroush-Azar and the Hancocks on the ground they were void for fraud, particularly because she was an unnamed indispensable party. She also contends the court erred by not issuing a statement of decision on the judicial estoppel issue, by finding the Hancocks own their side of the street through adverse possession, and by finding she has no private easement over their property for vehicular access.

We conclude Soroush-Azar's appeal lacks merit. As to Palmer's appeal, we conclude that while the court erred by not issuing a statement of decision on the judicial estoppel issue, reversal and remand is unwarranted because the record reveals the court's reasoning. Further, while the judicial estoppel finding was error insofar as it concerns the Hancocks, the error was harmless to Palmer. In other respects, Palmer's appeal lacks merit. We affirm the judgment.

3

FACTUAL AND PROCEDURAL BACKGROUND[2]

A.    *Virginia Way and the Parties' Properties*

In 1887 a developer recorded a map (Map 352) for a subdivision called La Jolla Park.  Map 352 depicts residential lots and dedicates a proposed 80-foot wide street called Virginia Way (originally College Street), which runs in a northeast to southeast direction parallel to Torrey Pines Road.

In 1977 Palmer purchased property located adjacent to both Torrey Pines Road and the north side of Virginia Way (a portion of Lot 30 and Lots 31, 32 and 33 of Block 45 on Map 352).  The property has a Torrey Pines Road address and vehicular access is via a narrow driveway off of that road.  Palmer believed the portion of Virginia Way abutting her property was part of her backyard, as it was never paved and contains mature trees and other landscaping.

In 2003 Soroush-Azar purchased property on the north side of Virginia Way, southwest of Palmer's property (Lots 27, 28, 29 and a portion of Lot 30 of Block 45 on Map 352).  Virginia Way is paved to a width of 40 feet, centered on the planned 80-foot street, between Prospect Avenue, to the west of the Soroush-Azar property, and Lot 28, or approximately to the mid-point of the Soroush-Azar property.  The unpaved portion contains a concrete pathway to the Palmer property, a concrete abutment near a public storm drain and landscaping.

---

[2]    In reciting the facts, the Hancocks rely heavily on a lengthy proposed statement of decision.  The reliance is improper as Palmer objected to it and the court never signed it.

Palmer's predecessor in interest, Mark Richert, erected a gated chain-link fence across the concrete pathway to replace a dilapidated wood fence. Richert and Soroush-Azar's predecessor in interest, Shamssi Liaghat, were uncertain of the property boundary and they agreed to the location of the fence from a marker. In this litigation, it was determined the fence abuts the Soroush-Azar property, approximately six feet from Palmer's property.

In 1997 the Hancocks purchased property on the south side of Virginia Way, directly across from Lots 29 through 33 of Block 45 (Parcels 1 and 2 of Block 73 on Map 976).[3] The pavement of Virginia Way extends to the Hancocks' garage on the west of their property and the remainder of the street is unpaved. Richert had also installed a chain-link fence along the centerline of Virginia Way, separating the Palmer and the Hancock properties. Mature trees and other landscaping are also present on the Hancock side.[4]

B.      *Palmer's Proposal to Jointly Pursue Vacation of Virginia Way*

In 2001 Palmer proposed to the Hancocks and Liaghat that they jointly pursue vacation of the unpaved portion of Virginia Way abutting their properties. Palmer sought to install a driveway from her property to Virginia Way because of the "increasing difficulty and danger" in using her Torrey Pines Road driveway. Palmer advised Liaghat

---

[3]     Property in the La Jolla Park development on the south side of Virginia Way was further subdivided in 1904 under Map 976.

[4]     An exhibit from the record showing the orientation of the subject properties to one another and to Virginia Way is attached as Appendix A, post.

5

that if the street were vacated, Liaghat's "new ownership" would obstruct Palmer's access, and thus she would require an easement over Liaghat's property. Liaghat opposed the venture. The Hancocks did not oppose it, but declined to participate in it.

C.    *Palmer's Action Against the City*

In 2003 Palmer brought an action against the City, under sections 771.010 and 771.020, to clear title to Virginia Way from its centerline to the boundary of her property. The complaint alleged the City never accepted the dedication of that portion, and it "has been used for residential purposes and as if [it] were free of the proposed dedication." Palmer did not notify Soroush-Azar or the Hancocks of the action.

The matter was assigned to the Honorable John S. Meyer. The parties stipulated that Map 352 was the only offer of dedication of Virginia Way. The City alleged it accepted the offer of dedication "by the passage of City of San Diego Ordinance No. 565, approved November 29, 1898, and there was no other acceptance of that offer of dedication at any time." San Diego Ordinance No. 565 was never recorded with the San Diego County Recorder's Office. Virginia Way as depicted on Map 352 "has never been paved or used as a roadway past the terminus at lot 30 as depicted on City of San Diego Engineering Drawing No. 19956-10-D."

In October 2004 the court entered judgment for Palmer. The court rejected the City's argument it was not required to record its acceptance of Virginia Way for it to be effective. The City relinquished its appeal rights in exchange for Palmer's waiver of costs.

6

D.      *Commencement of Current Action*

On the same day in January 2005, Soroush-Azar and Palmer filed complaints against each other.  Soroush-Azar's complaint was for nuisance, injunctive relief, and to quiet title,[5] and it alleged Palmer constructed fencing, a locked gate, and a concrete pathway across Soroush-Azar's property.  Palmer's complaint was for trespass and injunctive relief, and it alleged Soroush-Azar constructed a fence on Palmer's property to deny her access from Virginia Way.  Honorable William R. Nevitt, Jr., issued mutual restraining orders.  Palmer cross-complained against Soroush-Azar to quiet title, and for declaratory and injunctive relief.

E.      *Soroush-Azar's and the Hancocks' Actions Against the City*

The same day she sued Palmer, Soroush-Azar sued the City under sections 771.010 and 771.020 to clear title to the unpaved portion of Virginia Way extending from her property to the centerline of the street.  In May 2005 the Hancocks sued the City for the same relief as to the unpaved portion of Virginia Way abutting their property.  Neither Soroush-Azar nor the Hancocks notified Palmer of their actions.  The City stipulated to judgments.  In late 2005 Judge Nevitt entered judgment for Soroush-Azar and the Honorable Ronald S. Prager entered judgment for the Hancocks.[6]

---

[5]      Soroush-Azar later dismissed a cause of action for trespass.

[6]      The original judgment for the Hancocks mistakenly cleared title to the paved portion of Virginia Way abutting their garage, based on a drawing by Palmer's surveyor. In this action, the stipulated judgment was modified to rectify the mistake.

7

F.      *Continuation of Current Action*

In early 2006 after learning of the stipulated judgments, Palmer filed a supplemental/amended complaint.  It added the Hancocks and the City as defendants and challenged the stipulated judgments for extrinsic fraud, mistake, or illegality, on the grounds they were collusive and she was an indispensable party.  It also alleged the City violated the law by not complying with the notice and hearing provisions of the Streets and Highways Code, and by entering into stipulated judgments.  It further alleged the Hancocks constructed an illegal masonry wall on Virginia Way to deprive Palmer of vehicular access.[7]

After having chain-of-title issues researched, Palmer filed a first amendment to her supplemental/amended complaint, alleging the stipulated judgment for the Hancocks was also invalid because Palmer held fee title to the portion of Virginia Way abutting their property.  Before this time, Palmer assumed they owned the property.  The Hancocks cross-complained against Palmer for declaratory relief, alleging they owned the property by way of adverse possession.

The actions were consolidated and assigned to the Honorable Luis R. Vargas for trial.  In an in limine motion, the City argued Palmer was collaterally estopped from

---

7      In December 2006 Palmer moved for leave from Judge Nevitt to file a complaint in intervention in the Soroush-Azar quiet title action against the City to directly attack the stipulated judgment.  Judge Nevitt denied Palmer's motion on the ground of untimeliness, noting she learned of the stipulated judgment in January 2006.  Nonetheless, he considered the merits of her argument that the stipulated judgments were collusive and rejected the argument based on representations of the City's counsel.

challenging the stipulated judgments because she succeeded in clearing title to her portion of Virginia Way in an action under sections 171.010 and 171.020 without notifying Soroush-Azar and the Hancocks, and thus she could not object to their use of the same procedure. Soroush-Azar and the Hancocks joined in the motion.

After argument, the court ruled in the City's favor on the grounds of both collateral estoppel and judicial estoppel. The court, however, made its ruling tentative when Palmer requested the opportunity to present evidence. After a hearing lasting several days, the court confirmed its ruling. Further, the court ruled against Palmer on her corresponding motion for judgment on special defenses of collateral estoppel and judicial estoppel.

The court then acquiesced to Palmer's request to present additional evidence, over strenuous objections by the other parties.[8] After a several-day hearing, the court ultimately determined the judicial estoppel doctrine barred Palmer's challenge to the stipulated judgments. The court initially stated the stipulated judgments were binding on Palmer, but it reversed itself on that issue.

The second part of trial, consisting mainly of argument, was held sporadically over more than two years. In January 2010 the court entered judgment (1) denying Soroush-Azar any relief on her complaint; (2) denying Palmer relief on her challenges to the stipulated judgments in favor of Soroush-Azar and the Hancocks (as modified) in their

---

[8] The City filed a petition for writ of mandate and request for stay, which this court summarily denied. (*City of San Diego v. Superior Court* (June 14, 2007, D051054).)

9

actions against the City; (3) determining Palmer owns the property inside the gated fence her predecessor installed across the concrete pathway abutting the Soroush-Azar property; (4) determining Palmer has a private easement over the portion of Virginia Way to which title was cleared in Soroush-Azar's action against the City; (5) enjoining Soroush-Azar from obstructing Palmer's use of the easement; and (6) determining Palmer originally owned fee title to the portion of Virginia Way to which title was cleared in the Hancocks' action against the City, but they gained ownership through adverse possession, subject to a stipulated private easement in favor of Palmer in the lower canyon area.

The judgment is silent as to whether Palmer had a private easement over the upper portion of Virginia Way abutting the Hancock property, but during trial the court stated on the record that the Hancocks' adverse possession extinguished Palmer's easement. In a statement of decision, the court explained Palmer owns the property inside her gated fence under the agreed boundary doctrine.

DISCUSSION

I

*Soroush-Azar's Appeal*

A

*Agreed Boundary Doctrine*

Soroush-Azar challenges the sufficiency of the evidence to support the court's finding that Palmer owns the area within her gated fence under the agreed boundary doctrine. "Substantial evidence is evidence that a rational trier of fact could find to be reasonable, credible and of solid value. We view the evidence in the light most favorable

to the judgment and accept as true all evidence tending to support the judgment, including all facts that reasonably can be deduced from the evidence.  We affirm the judgment if an examination of the entire record viewed in this light discloses substantial evidence to support the judgment." (*Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726, 736.)

"When coterminous landowners are uncertain as to the true location of their common boundary, they may establish that boundary by agreement, pursuant to a legal theory commonly referred to as the 'agreed boundary' doctrine." (*Bryant v. Blevins* (1994) 9 Cal.4th 47, 49.)  "The agreed-boundary doctrine constitutes a firmly established exception to the general rule that accords determinative legal effect to the description of land contained in a deed." (*Id.* at p. 54.)  "Once established, the agreed boundary line becomes the true line that is legally enforceable between the parties, regardless of the accuracy of the agreed location as it may appear by subsequent measurements (e.g., a subsequent survey)." (Miller & Starr, Cal. Real Estate (3d ed. 2012) § 14:39 (Miller & Starr).)

"Although the agreed-boundary doctrine is well established in California, our case law has recognized that the doctrine properly may be invoked only under carefully specified circumstances. . . . 'The requirements of proof necessary to establish a title by agreed boundary are well settled by the decisions in this state. [Citations.]  The doctrine requires that there be [1] an uncertainty as to the true boundary line, [2] an agreement between the coterminous owners fixing the line, and [3] acceptance and acquiescence in the line so fixed for a period equal to the statute of limitations or under such

11

circumstances that substantial loss would be caused by a change of its position.' " (*Bryant v. Blevins*, *supra*, 9 Cal.4th at p. 55.)

"In some circumstances, the erection of a fence can establish an agreed boundary line between coterminous properties when all the other elements of the agreed boundary doctrine are present. The parties' longstanding acceptance of a fence as a boundary line without objection, by itself, gives rise to an *inference* that there was uncertainty and a boundary agreement between the coterminous owners resulting from an uncertainty or dispute as to the location of the true line." (Miller & Starr, *supra*, § 14:43.)

Palmer's predecessor in interest, Richert, purchased the property in 1967. On direct examination, he testified there was an existing concrete pathway in the Virginia Way easement, which led to the back of his house, and he and his guests regularly used the pathway for access. In concert with Soroush-Azar's predecessor in interest, Liaghat, Richert installed a gated chain-link fence across the pathway to keep his dogs in. Richert and Liaghat "couldn't really fix a certain point," and they agreed on a boundary by relying on "a marker in the cement."

On cross-examination, Richert was asked, "You were not, when you had the discussion with the neighbors, utilizing and agreeing that that was going to be a boundary, a property line for your respective properties; correct?" and "[t]hat was going to be subject to whatever the Grant Deed says, right?" He answered the questions affirmatively.

Soroush-Azar asserts Richert's testimony on direct examination is insufficient because he contradicted himself on cross-examination. The court acknowledged the

12

inconsistency in Richert's testimony, but expressly stated it found a credible inference that he and Liaghat agreed to set a permanent boundary without referring to deeds. The court noted the fence was placed in concrete, and there "appeared to be a fairly solid understanding that this would be where this fence would be for a long time."

We must resolve all evidentiary conflicts and indulge in all reasonable inferences in support of the judgment. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) "If the evidence gives rise to conflicting inferences, one of which supports the trial court's findings, we must affirm." (*Milton v. Perceptual Development Corp.* (1997) 53 Cal.App.4th 861, 867.) " 'The testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions.' " (*In re Robert V.* (1982) 132 Cal.App.3d 815, 821.) Under these standards, we conclude substantial evidence supports the ruling.

B

*Private Easement*

1

Additionally, Soroush-Azar contends the court erred by determining Palmer has a private easement for vehicular access over the Virginia Way property to which Soroush-Azar cleared title in her action against the City.[9] We also disagree with this point.

---

[9] Soroush-Azar concedes Palmer has an easement across her property in the area of the concrete pathway for pedestrian access.

13

Soroush-Azar concedes that because of the limited effect of an action under sections 771.010 and 771.020 to clear title, Palmer "remained free to claim private rights" across the Soroush-Azar property. "It is a thoroughly established proposition in this state that when one lays out a tract of land into lots and streets and sells the lots by reference to a map which exhibits the lots and streets as they lie with relation to each other, the purchasers of such lots have a private easement in the streets opposite their respective lots, for ingress and egress and for any use proper to a private way, and that this private easement is *entirely independent of the fact of dedication to public use*, and is a private appurtenance to the lots, of which the owners cannot be divested except by due process of law." (*Danielson v. Sykes* (1910) 157 Cal. 686, 689 (*Danielson*), italics added; *Tract Development Services, Inc. v. Kepler* (1988) 199 Cal.App.3d 1374, 1381-1382; Miller & Starr, *supra,* § 15:26.)

Palmer's grant deed expressly refers to Map 352. Further, a chain of title expert testified that all conveyance documents for Palmer's property from the time Map 352 was recorded in 1887 refer to the map. Map 352 delineates Virginia Way (then College Street).

Soroush-Azar's sole contention is that Map 352 did not convey so-called *Danielson* rights because it was not "signed or acknowledged." She relies on this language from *Danielson*: "The making and filing of such a plat duly signed and acknowledged by the owner, as was the case here, is equivalent to a declaration that such right is attached to each lot as an appurtenance." (*Danielson*, *supra*, 157 Cal. at p. 690.)

14

*Danielson*, however, does not hold that easement rights under an old map are contingent on whether it is signed and acknowledged. "In California, '[i]t is axiomatic that cases are not authority for propositions not considered.' " (*Cottonwood Duplexes, LLC v. Barlow* (2012) 210 Cal.App.4th 1501, 1508.) Soroush-Azar acknowledges that subdivision maps were not required to be signed and acknowledged until 1893 when the Legislature first adopted a subdivision map act. (See *Gardner v. County of Sonoma* (2003) 29 Cal.4th 990, 1000-1001.)

The court rejected Soroush-Azar's argument on the ground Map 352 predates the subdivision map act. The court also explained Map 352 was recorded and "has the level of reliability that I can trust," particularly since subdivision owners relied on it. We agree with the court's ruling. Even sale by reference to an unrecorded map delineating streets creates private easement rights. (Miller & Starr, *supra*, §§ 15:26, 26:7.)

2

Soroush-Azar also contends the court abused its discretion by creating a "floating," or unfixed, easement for Palmer's vehicular access. "A 'floating easement' . . . is an easement for right-of-way . . . which, when created, is not limited to any specific area of the servient tenement." (*Los Angeles v. Howard* (1966) 244 Cal.App.2d 538, 541, fn. 1.) Soroush-Azar complains that a floating easement invites continued litigation between "implacable neighbors," and is a cloud on her title until its parameters are fixed.

We again disagree with Soroush-Azar. "Easements and licenses may, but need not, have definite boundaries other than the boundaries of the servient tenements themselves. An easement granted in general terms, nonspecific as to its particular nature,

15

extent or location, is . . . perfectly valid. It entitles the holder to choose a 'reasonable' location and to use such portion of the servient tenement as may be reasonably necessary for the purposes for which the easement was created." (*Colvin v. Southern Cal. Edison Co.* (1987) 194 Cal.App.3d 1306, 1312, abrogated on another ground by *Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1106-1108.)

Indeed, it was impossible for the court to place specific parameters on Palmer's easement. The City explained that "[a]ny design is going to be subject to a coastal development permit [and is] going to be subject to the permitting process by the City." Further, the City would not consider the driveway plan until judgment was entered giving Palmer the right to use Soroush-Azar's property for vehicular access. Additionally, Soroush-Azar's attorney stated "we will be filing an opposition [to the engineer's driveway plans] with the City through the administrative process every step of the way," which will inevitably delay fixing easement parameters. Soroush-Azar does not explain how the court could have been more definite.

II

*Palmer's Appeal*

A

*Judicial Estoppel/Statement of Decision*

1

Palmer contends the court erred by not issuing a statement of decision on its finding she was judicially estopped from challenging the stipulated judgments for

16

Soroush-Azar and the Hancocks in their actions against the City to clear title.[10]  We conclude the court erred, but under the circumstances here reversal and remand is unwarranted.

" ' " 'Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.]  . . .' "  [Citation.]  The doctrine [most appropriately] applies when:  "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are *totally inconsistent*; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." ' "  (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422, italics added.)

"The trial court has a mandatory duty to provide a statement of decision when properly requested."  (*Espinoza v. Calva* (2008) 169 Cal.App.4th 1393. 1397; § 632.) "The purpose in requiring findings is to demonstrate to a losing party the possible futility of any appeal, and to focus the appellate review on the pertinent portions of the record underlying the trial court's determination."  (*In re Marriage of Carlsen* (1996) 50 Cal.App.4th 212, 217-218; *Miramar Hotel Corp. v. Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1129.)

---

10     The court held extensive proceedings on the parties' requests for statements of decision, proposed statements and objections to them, and the record does not reveal why it did not issue a statement on the judicial estoppel issue.

"Normally, the court's failure to provide a properly requested statement of decision results in a remand ordering the court to issue such a statement." (*Espinoza v. Calva, supra*, 169 Cal.App.4th at p. 1398; see e.g., *Miramar Hotel Corp. v. Frank B. Hall & Co.*, *supra*, 163 Cal.App.3d at pp. 1128-1130.) Remand is unwarranted, however, when the issuance of a statement of decision would serve no useful purpose. (*Espinoza v. Calva,* at p. 1398.) "The law neither does nor requires idle acts." (Civ. Code, § 3532.)

Such is the case here, as the court's ruling could only have been based on a finding Palmer took totally inconsistent positions in her action against the City to clear title, and in collaterally attacking the stipulated judgments for Soroush-Azar and the Hancocks in their actions against the City. On this record, reversal and remand for the issuance of a statement of decision would merely waste judicial resources and cause unwarranted delay, after the completion of a lengthy and thorough trial. Thus, we proceed to the merits of the judicial estoppel ruling.

2

" ' " The [judicial estoppel] doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. [Citation.]' " ' [Citation.] Consistent with these purposes, numerous decisions have made clear that judicial estoppel *is an equitable doctrine,* and its application, even where all necessary elements are present, is discretionary." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.*, *supra*, 36 Cal.4th at p. 422.) "It has been said that '[b]ecause of its harsh consequences, the doctrine should be applied with caution and limited to egregious circumstances.' " (*Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th

18

39, 47.) "The determination of the existence of judicial estoppel is a factual finding which will be upheld if supported by substantial evidence." (*International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 354.)

Under section 771.010, there is a conclusive presumption a municipality did not accept a proposed street dedication, when four conditions are met: "(a) The proposal was made by filing a map only. [¶] (b) No acceptance of the dedication was made and recorded within 25 years after the map was filed. [¶] (c) The real property was not used for the purpose for which the dedication was proposed within 25 years after the map was filed. [¶] (d) The real property was sold to a third person after the map was filed and used as if free of the dedication."

Under subdivision (a), section 771.020, "[a]n action is authorized to clear title to real property of a proposal to dedicate the property for public improvement if there is a conclusive presumption pursuant to Section 771.010 that the proposed dedication was not accepted." The "judgment in the action shall clear the title of the proposed dedication and remove the cloud created by the proposed dedication." (§ 771.020, subd. (b)(2).)

Palmer argued she did not take totally inconsistent positions in her action against the City and her action against Soroush-Azar because she alleged the concrete pathway on the portion of Virginia Way abutting the Soroush-Azar property was a *public* way, and thus the City accepted that portion through use. "Litigants seeking to establish dedication to the public must also show that various groups of persons have used the land. If only a limited and definable number of persons have used the land, those persons may be able to claim a personal easement but not dedication to the public. An owner may well tolerate

19

use by some persons but object vigorously to use by others." (*Gion v. Santa Cruz* (1970) 2 Cal.3d 29, 39-40, superseded by statute on another point as recognized in *Friends of The Trails v. Blasius* (2000) 78 Cal.App.4th 810, 822.)

In her action against the City, however, Palmer took the position that beyond her gated fence the concrete pathway was not a public improvement and there was no impediment to clearing title. Palmer cites no authority to support her position the pathway was public in Soroush-Azar's area, but became private at her gate. In his testimony, Richert established that his invitees, and not the public, used the pathway.[11]

Palmer also argued Soroush-Azar was required to proceed under Streets and Highways Code section 8300 et seq., for the vacation of a public street even though Palmer availed herself of the truncated procedure set forth in sections 771.010 and 771.020 on the ground the unpaved portion of Virginia Way is not a public improvement. We disagree with Palmer's assertion her positions were not in conflict because she required access over the portion of Virginia Way abutting the Soroush-Azar property, and the converse was not so. As discussed, the public nature of the unpaved portion of Virginia Way was immaterial because Palmer retained private easement rights over the

---

[11]    Soroush-Ajar and the Hancocks argued at trial, and continue to argue on appeal, that judicial estoppel applies because Palmer took the position in her action against the City that her property *did not abut* Virginia Way as depicted on Map 352, but took the position in this action that the Soroush-Azar and Hancock properties *did abut* Virginia Way as depicted in Map 352. The argument is specious. Map 352 speaks for itself, and it does not permit an argument Virginia Way did not extend to the Palmer property. Palmer's clear position was that her property did not abut the *paved* portion of Virginia Way.

20

Soroush-Azar property. We conclude substantial evidence supports the court's judicial estoppel ruling insofar as Soroush-Azar is concerned.

Further, the evidence supports the court's judicial estoppel ruling as to the Hancocks insofar as Palmer's Streets and Highways Code argument is concerned. We conclude the ruling was incorrect, however, insofar as Palmer argued the stipulated judgment for the Hancocks was invalid because Palmer, and not the Hancocks, held fee title to the portion of Virginia Way abutting the Hancock property. That argument unquestionably did not conflict with the position Palmer took in her action against the City.

The error was harmless, however, because the court nonetheless gave Palmer the unfettered right to present evidence and argument going to the merits of her collateral attack of the Hancocks' stipulated judgment. (See *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1595.) The declaratory relief claims between Palmer and the Hancocks were fully litigated and adjudicated, as discussed below.

B

*Collateral Attack on Stipulated Judgments*

1

Palmer contends the stipulated judgments are void, at least as to her, because they were obtained by fraud. She asserts she was an indispensable party to the Soroush-Azar and the Hancocks' actions against the City, but they failed to notify her of the proceedings.

21

"It is well settled that if a court attempts to proceed in an action without the presence of indispensable parties it acts beyond its jurisdiction." (*Peabody Seating Co. v. Superior Court of Los Angeles County* (1962) 202 Cal.App.2d 537, 542.) "An order rendered without an indispensable party is void as to that party." (*In re Marriage of Ramirez* (2011) 198 Cal.App.4th 336, 345.) " 'Because the requirement that indispensable parties be before the court is mandatory, it may be raised at any time and it may be raised by the appellate court on its own motion if the parties fail to make the objection.' " (*Ibid.*) "Thus, a judgment in an action not naming an indispensable party . . . might well be inadequate because it is subject to later collateral attack by the nonjoined indispensable party." (*Save Our Bay, Inc. v. San Diego Unified Port Dist.* (1996) 42 Cal.App.4th 686, 693.)[12]

As to the Hancocks, Palmer asserts she was indispensable as the fee owner of the disputed property. The fee owner of property underlying a dedicated public way is the party with standing to bring an action to clear title under sections 771.010 and 771.020. (*Paris v. County of Santa Clara* (1969) 270 Cal.App.2d 691, 696 [discussing § 748.5, predecessor to §§ 771.010 & 771.020].) "The action shall be pursuant to Chapter 4 [on quiet title actions] (commencing with Section 760.010) and shall have the following

---

[12]   "Failure to join an 'indispensable' party is not 'a jurisdictional defect' in the fundamental sense; even in the absence of an 'indispensable' party, the court still has the power to render a decision as to the parties before it which will stand. It is for reasons of equity and convenience, and not because it is without power to proceed, that the court should not proceed with a case where it determines that an 'indispensable' party is absent and cannot be joined." (*Sierra Club, Inc. v. California Coastal Com.* (1979) 95 Cal.App.3d 495, 500.)

22

features:  [¶]  (1) The public entity to which the dedication was proposed shall be named as defendant.  [¶] (2) "The judgment in the action shall clear the title of the proposed dedication and remove the cloud created by the proposed dedication."  (§ 771.020, subd. (b).)

Section 762.010, which is part of chapter 4, provides:  "The plaintiff shall name as defendants in the action the persons having *adverse claims to the title* of the plaintiff against which a determination is sought."  (Italics added.)  Section 762.060, subdivision (b), which is also part of chapter 4, provides:  "In an action under this section, the plaintiff shall name as defendants the persons having adverse claims that are *of record* or known to the plaintiff or reasonably apparent from an inspection of the property."  (Italics added.)

"A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant."  (Civ. Code, § 1112.)  "The policy behind the law is to avoid ownership in land in strips and gores by attaching the underlying fees of streets, both active and abandoned, to the adjoining lots."  (*Safwenberg v. Marquez* (1975) 50 Cal.App.3d 301, 306.)  "The rule that land described by reference to a street or highway runs to the center of the street is only an aid to construction, or presumption, which applies unless a different intent appears by the express terms of the instrument."  (Miller & Starr, *supra,* § 8:65.)

Mark and Ruth McKinney (the McKinneys) once owned both the Palmer and the Hancock properties, and it is undisputed that in 1955 when the McKinneys sold the

23

Hancock property to the Hancocks' predecessors in interest, Harlow and Zelda Cady (the Cadys), the McKinneys expressly reserved their fee interest in the property underlying Virginia Way that abutted the Hancock property.[13]  The Hancocks conceded "the deed to the Cadys from the McKinneys was quite clear that it did not include the questioned parcel, that 40-foot strip."  Further, the court determined that by operation of law, the McKinneys' reserved interest devolved to Palmer.  (*Machado v. Title Guarantee & Trust Co.* (1940) 15 Cal.2d 180, 186 [it is improbable that grantor intends to reserve interest in the street when he or she parts with title to adjoining land]; *Los Angeles City High School Dist. v. Swensen* (1964) 226 Cal.App.2d 574, 579 [" '[T]here is no object in the grantor's retaining a narrow strip of land which is of little or no use or value to him when separated from the adjoining land.' "].)

The Hancocks assert Palmer was not an indispensable party because she did not have an "adverse claim[] to the title of the plaintiff against which a determination [was] sought."  (§ 762.010.)  Rather, they merely sought a ruling against the City.  Despite the narrow focus of an action under sections 771.010 and 771.020, however, the amended stipulated judgment states the Hancocks "are the sole owners, in fee simple" of the disputed property.  The Hancocks' designated title expert opined the stipulated judgment

---

[13]     The Hancocks acquired title by grant deed from Capital Alliance Income Trust (CAIT) in 1997.  CAIT acquired title from the Cadys under a trustee's deed in 1996.  The Cadys acquired title under a grant deed from the McKinneys in 1955, when the McKinneys also owned the Palmer property.  The McKinneys expressly reserved all interest in Virginia Way.

24

"wasn't complete" because "the McKinneys or [their] successor," who is Palmer, were not named as parties.

It appears that Palmer was an indispensable party, since sections 762.010 and 762.060, subdivision (b) are expressly incorporated into the procedure to clear title to dedicated property. (§ 771.020, subd. (b).) In any event, we are not required to resolve the issue because the Hancocks conceded the stipulated judgment "isn't effective or binding on [Palmer]." Likewise, the City conceded the stipulated judgment was not binding on her, and "in the next phase of this trial, this Court could determine that in fact [Palmer] does own the fee that [the Hancocks are] claiming in this case." Section 764.045 provides: "Except to the extent provided in Section 1908, the judgment [clearing title] does not affect a claim in the property or part thereof of any person who was not a party to the action if any of the following conditions is satisfied: [¶] (a) The claim was *of record* at the time the lis pendens was filed or, if none was filed, at the time the judgment was recorded." (Italics added.) Thus, there is no prejudice; the result is the same whether or not Palmer was named in the Hancocks' action against the City.

We conclude Palmer was not an indispensible party to Soroush-Azar's action against the City, because Palmer had no adverse *title* claim. Soroush-Azar undisputedly held fee title to the portion of Virginia Way abutting her property. Palmer had private easement rights over the Soroush-Azar property to satisfy her access needs, which were not subject to extinguishment in the action against the City.

25

Palmer also asserts the stipulated judgments for Soroush-Azar and the Hancocks are invalid because the City may not stipulate to quiet title. She cites *County of San Diego v. California Water & Tel. Co.* (1947) 30 Cal.2d 817, 824, which explained, "[A]n agreement by local officials to abandon, vacate, or sell a road is void." That opinion, however, concerned the statutory method for vacating public improvements. (*Id.* at p. 823 ["if the Legislature has provided a method by which a county or city may abandon or vacate roads, that method is exclusive" and "a municipality must follow the statutory procedure prescribed for the sale of public property"].) As discussed, the court reasonably found Palmer was judicially estopped from challenging the stipulated judgments on the ground Streets and Highways Code section 8300 et seq. set forth the exclusive remedy, as she availed herself of the truncated remedy set forth in sections 771.010 and 771.020.

Additionally, Palmer argues an evidentiary hearing was required under section 764.010, which provides: "The court shall examine into and determine the plaintiff's title against the claims of all the defendants. The court *shall not enter judgment by default* but shall in all cases require evidence of plaintiff's title and hear such evidence as may be offered respecting the claims of any of the defendants, other than claims the validity of which is admitted by the plaintiff in the complaint. The court shall render judgment in accordance with the evidence and the law." (Italics added.) Section 764.010 "simply provides that a plaintiff does not have a right to entry of judgment in his or her favor *as a matter of course* following entry of the defendant's default in a quiet title action." (*Yeung*

*v. Soos* (2004) 119 Cal.App.4th 576, 581.)  The stipulated judgments here were not rendered by default.  As the Hancocks point out, sections 771.010 and 771.020 do not "require[] the municipality to demand an evidentiary hearing or dispositive motion if it concludes it will lose the case."

C

*Adverse Possession*

1

Palmer also challenges the court's finding in favor of the Hancocks on adverse possession.  "The elements of adverse possession are as follows:  '(1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner.  (2) It must be hostile to the owner's title.  (3) The holder must claim the property as his own, *under either color of title or claim of right*.  (4) Possession must be continuous and uninterrupted for five years.  (5) The holder must pay all the taxes levied and assessed upon the property during the period.' "  (*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1110.)

The claim of right theory of adverse possession applies here.  " 'Adverse possession under a claim of right is not founded on a written instrument, judgment or decree.' "  (*Aguayo v. Amaro*, *supra*, 213 Cal.App.4th at p. 1111.)  "There is no good faith requirement for adverse possession based on a claim of right.  [Citations.]  A claim of right can be founded on either a deliberate trespass, or a mistake if the claimant intends to claim the area occupied as his or her land."  (*Ibid.*; §§  324, 325.)  "The title established by adverse possession is a new and *absolute* fee title."  (Miller & Starr, *supra*, § 16:1.)

27

Palmer contends that as a matter of law, the Hancocks cannot establish adverse possession. Palmer asserts the five-year requirement is unmet because the unimproved portion of Virginia Way was a public right of way until November 2005, when the stipulated judgment was entered for the Hancocks in their action against the City. She cites Civil Code section 1007, which precludes adverse possession of property "dedicated to or owned by the state or any public entity."

"[T]he reason for prohibiting adverse possession of public property is because there may be little incentive for a public entity to be aware of who is using public property or take steps to interfere with a potential adverse possessor." (*Hays v .Vanek* (1989) 217 Cal.App.3d 271, 286.) "Since the purpose of the doctrine is to protect a public entity from loss of publicly owned rights through suffering an encroachment, it has no application to the loss of rights of an underlying private owner." (*Friends of the Trails v. Blasius*, *supra*, 78 Cal.App.4th at p. 827; *Abar v. Rogers* (1972) 23 Cal.App.3d 506, 513 ["It is established law that one, while recognizing a superior title or right in a governmental entity, may nevertheless adversely possess land as against others"].) Thus, Civil Code section 1007 does not defeat the Hancocks' adverse possession claim.

Additionally, Palmer challenges the sufficiency of the evidence to support the court's ruling. The burden of proof is on the party claiming adverse possession. If he or she presents a prima facie case, the burden of proof shifts to the record owner to disprove the claimant's title. (Miller & Starr, *supra,* § 16:2.) Adverse possession is a question of fact, and the court's ruling is subject to a substantial evidence standard of review. (*Aguayo v. Amaro*, *supra*, 213 Cal.App.4th at p. 1112.)

Palmer asserts the Hancocks failed to prove their use of the property was "adverse" to her rights or incompatible with her use of the property for pedestrian and vehicular access. The term "adverse" is "synonymous with use 'under claim of right' and 'hostile' use. [Citation.] 'Adverse use' means only that the claimant's use of the property was made without the explicit or implicit permission of the landowner." (*Aaron v. Dunham* (2006) 137 Cal.App.4th 1244, 1252.) The requirement of "adverse" possession "does not mean that the parties have an actual dispute over the title, but merely that the claimant's possession is without recognition of any rights of the true owner." (Miller & Starr, *supra*, § 16:13, fn. omitted.) "[C]ontinuous use over a long period of time constitutes communication of the claim of right." (*Aaron v. Dunham*, *supra*, at p. 1253*.)*

Section 325 provides: "(a) For the purpose of constituting an adverse possession by a person claiming title, not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only: [¶] (1) Where it has been protected by a substantial enclosure. [¶] (2) Where it has been usually cultivated or *improved*." (Italics added.)

The area at issue is approximately 40 feet by 100 feet. Approximately a third of the area is flat, a third is a steep hill going into a canyon to the east, and the remaining third is in the canyon and relatively flat. Since purchasing their property in 1997, the Hancocks have used the flat portion as an extension of their front yard. They installed cobblestone, mature trees, grass, a sprinkler system, a picket fence, rose bushes, a planter area with a brick base, and a wooden bench that is bolted to the ground. They also

29

installed a block wall next to their garage, which extends four to five feet into the

disputed area.[14]

The evidence shows that because of its topography, the canyon portion of the

property had little use, and thus improvements would not be expected. The Hancocks

gave Palmer permission to park her cars on the lower portion and use it to access her

driveway off of Torrey Pines Road. Palmer once billed the Hancocks for half of her

gardener's time in performing maintenance work in the canyon area and the Hancocks

reimbursed Palmer.

While the above evidence is not overwhelming, particularly as to the canyon

portion of the property,[15] the trial judge toured the site, and thus had a perspective this

court lacks. "It is clearly the rule in California that when the view of the trial judge is

with the consent of the parties (as it was in the case at bench) what is then seen is itself

evidence and may be used alone or with other evidence to support the findings.

[Citations.] Within the compass of this rule, it is also well settled that when the trial

---

[14]    In 2004 the Hancocks installed a stucco wall in the area in dispute, but that is immaterial because of the five-year period for adverse possession. Palmer apprised the court that she did not intend to use the flat, improved portion of the property for vehicular access.

[15]    "There are differences in the nature of the possession required and the area that can be constructively possessed. When a person alleges a title by adverse possession under color of title, the title includes all of the property described in the document of title, even though the adverse possessor is in actual possession of only a part of the described property, unless the unoccupied portion is in the possession of another. However, when title is sought merely under a claim of right, it can include only those areas that the claimant has effectively and actually occupied in the required manner." (Miller & Starr, *supra,* § 16:3.)

judge views the premises and a record of what he saw has not been made a part of the transcript on appeal, an appellate court *must assume that the evidence acquired by such view is sufficient to sustain the finding in question*." (*South Santa Clara Valley Water Conservation Dist. v. Johnson* (1964) 231 Cal.App.2d 388, 399, italics added; *Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 762; *San Francisco Bay Area Rapid Transit Dist. v. Central Valley National Bank* (1968) 265 Cal.App.2d 551, 555 ["trial court inspected the leased premises, so that its observations must be considered independent evidence in support of the judgment"].)

Palmer has not cited to any part of the voluminous record showing Judge Vargas made any record of his site visit. "Since the court's observations were not reported and are not part of the record on appeal, we must presume that the evidence the court saw was sufficient to support its findings." (*Hirshfield v. Schwartz*, *supra*, 91 Cal.App.4th at p. 762.)

Palmer also asserts the Hancocks did not satisfy the elements of adverse possession because they did not pay taxes on the property until after their action against the City under sections 771.010 and 771.020. Palmer, however, conceded at trial this was not an element of the Hancocks' case because the City did not previously assess taxes on the property. (See *Gilardi v. Hallam* (1981) 30 Cal.3d 317, 327; *Main Street Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1056-1057.)

2

Lastly, Palmer contends the court erred by finding she does not have a private easement (*Danielson* easement) for pedestrian and vehicular access over the portion of

31

Virginia Way the Hancocks acquired through adverse possession, similar to the private easement she has over the Soroush-Azar property.[16]  We disagree.

"An easement obtained by grant . . . may indeed be lost by prescription, e.g., when the owner of the servient tenement makes a use of his or her own land in a manner which is adverse to the rights represented by the easement."  (*Tract Development Services, Inc*., (1988) 199 Cal.App.3d 1374, 1386; *Sevier v. Locher* (1990) 222 Cal.App.3d 1082, 1085.) " 'The elements necessary to establish title by adverse possession are tax payment and open and notorious use or possession that is continuous and uninterrupted, hostile to the true owner and under a claim of title,' for five years."  (*Sevier v. Locher, supra,* at p. 1085.)  As the elements are the same as for obtaining title through adverse possession, we affirm the easement ruling based on the evidence and Judge Vargas's site visit.

DISPOSITION

The judgment is affirmed.  Palmer is entitled to costs of appeal from Soroush-Azar.  The Hancocks and the City are entitled to costs of appeal from Palmer.

McCONNELL, P. J.

WE CONCUR:

McINTYRE, J.

AARON, J.

---

[16]    The Hancocks incorrectly assert the court did find Palmer had a *Danielson* easement despite its adverse possession ruling.